HON. JAMES BARRETT,  
HON. HOMER E. ROYCE, } ASSISTANT JUDGES.  
HON. H. HENRY POWERS,

---

## LAING v. McCALL.

### *Contract. Illegal Consideration.*

A contract of sale induced in part by a desire on behalf of both vendor and purchaser to cause certain promissory notes of the vendor's to be paid, on which he has forged the names of persons as indorsers, and thereby to prevent a prosecution for the forgery, is illegal and void, and leaves the property subject to attachment by the vendor's creditors.

TRESPASS for nine two-year old cattle. Plea, the general issue, and notice of justification under process against one William Moncrief. Trial by jury, June Term, 1877, DUNTON, J., presiding.

The plaintiff introduced in evidence a bill of sale from said Moncrief to himself, dated June 21, 1876, of a large amount of

83

personal property, including all of his interest in the cattle in question, which had been turned out by Moncrief to one L. D. Hopkins, to indemnify him for indorsing a note for $150 for Moncrief at the First National Bank of Granville, N. Y. The plaintiff's evidence tended to show, that said bill of sale was made in pursuance of a previous arrangement whereby Moncrief agreed to transfer all of his personal property to the plaintiff, if the plaintiff would pay certain debts that Moncrief owed to certain persons in Rupert, Vt., and to said bank, and to the First National Bank of Salem, N. Y.; and that the plaintiff began the payment of said debts in pursuance of said arrangement, before the execution of the bill of sale. The plaintiff testified that he understood that the title to the property passed to him on the date of the bill of sale; and that certain of said debts were evidenced by Moncrief's promissory notes, purporting to be indorsed by various persons. It was conceded that those indorsements were forged by Moncrief. The plaintiff was asked on cross-examination if any part of the consideration that led him to take up the indorsed notes was, that he might save Moncrief from prosecution for forgery. He replied that he did not do it to prevent prosecution, and did not suppose he was doing anything to save Moncrief therefrom; that he did not take up all the forged paper, but got what came in his way; paid $500 that was not forged; and that one of the forged notes he never saw. He further said, in substance, that he thought that, perhaps, if all who held forged paper got their pay, they would not be so likely to take Moncrief up; that he didn't know but somebody might take him up if he didn't get his pay; that Moncrief's wife was his daughter; that for her sake he wished to avoid the disgrace that a prosecution for forgery might bring; but that he didn't care for Moncrief; and that that was one of the considerations that led him to enter into the arrangement with Moncrief, but a minor and secondary one, as he did not think Moncrief would be arrested.

The plaintiff introduced said Hopkins as a witness, whose testimony tended to show that in the spring of 1876, and before the attachments were made by the defendant, Moncrief executed a note of $150 to the First National Bank of Granville, and forged

the witness's name thereon as indorser ; that afterwards, on June 16, five days before the first of said attachments was made, Moncrief came to him and confessed the forgery ; that while Moncrief was there, the president of said bank appeared, and asked the witness if he indorsed the note, and, upon his saying that he did not, asked him if he would ; that after some conversation the witness told Moncrief that he would indorse the note if he would turn out the cattle in question as security therefor, whereupon it was agreed that Moncrief should deliver the cattle on the next morning, and the witness indorsed the note, and on the next morning Moncrief delivered the cattle as agreed.

On cross-examination the defendant's counsel offered to show that the consideration that led to the indorsement was, the prevention of a prosecution of Moncrief for forgery of the indorsement on the note then taken up, and asked the witness if his object and motive in indorsing the note was not to save Moncrief from prosecution. The plaintiff objected to the answer to that and similiar questions, and the answers were excluded, to which the defendant excepted. It appeared that the cattle in question went into possession of Hopkins, pursuant to the agreement between him and Moncrief on June 17, and there remained until August 19, when they were taken by defendant and sold on execution, as hereafter stated ; and that Hopkins had no lien other than the one by virtue of said arrangement.

Other questions were made relative to a release by Hopkins of his lien, and as to the time when Hopkins had notice of the sale to the plaintiff ; but as they are not material to the points decided, they are not stated.

It appeared that judgments were obtained in the suits in which the attachments were made, executions duly issued and levied, and the property sold thereon in due form ; that Moncrief had never been prosecuted for the forgery, and, at the time of trial, was residing in Illinois ; and that the plaintiff had preserved all of said notes, shown them to all who desired to see them, and was ready to deliver them to the state's attorney or any one who might wish to prosecute Moncrief. It also appeared that about ten days after the attachments were made, the plaintiff made an

arrangement with Hopkins whereby Hopkins surrendered his lien to the plaintiff, and agreed to keep the cattle for him, and that the plaintiff afterwards paid him for their keeping.   It appeared that plaintiff paid debts for Moncrief to an amount exceeding the value of the property he received.

The defendant's first request to charge was, that if any part of the consideration of the sale from Moncrief was, that certain notes forged by Moncrief should be taken up by the plaintiff, and if any part of the consideration moving the plaintiff to the execution of the contract was, that by taking up said notes Moncrief would be less liable to be arrested for forgery, then the contract was void as to *bona-fide* creditors of Moncrief; and that such part consideration need not have been expressed, but might be inferred from the circumstances of the case.   The court refused so to charge, and submitted to the jury no question as. to the legality of the consideration of the sale.   To the refusal to charge as requested, the defendant excepted.   Verdict for plaintiff.

*John W. Beebe*, for the defendant.

The court erred in excluding the testimony of Hopkins as to the consideration of the contract of pledge, and in refusing to charge as requested.   If any part of the consideration was illegal, the entire contract was thereby rendered void as to *bona-fide* creditors of Moncrief.   *Badger* v. *Williams*, 1 D. Chip. 137 ; *Harding* v. *Harding*, 25 Vt. 487 ; *Lovejoy* v. *Whipple*, 18 Vt. 379.

When any part of the consideration of a contract is the suppression or destruction of evidence on which a criminal prosecution might be based, or the stifling of a criminal prosecution in any way, the contract is void.   *Hinsdill* v. *White*, 34 Vt. 558 ; *Dixon* v. *Olmstead*, 9 Vt. 310.

*Burton & Munson* and *T. Sibley*, for the plaintiff.

The sale to the plaintiff was valid.   No illegal consideration entered into the contract.   The plaintiff's thinking that perhaps if those who held forged paper got their pay they would be less likely to prosecute, infects his acts with no taint of illegality.

The question is not what a party thinks, but whether he is induced so to think by representations of the other party; not whether a prosecution will be less likely, but whether any promise tending to make it less likely is given by persons seeking their pay at the expense of public justice. It makes no difference with what motives a man does a legal act.

But the question as to legality of consideration becomes important only when the aid of the court is sought to enforce the contract. When the contract is executed, the court will leave parties as they are.

The opinion of the court was delivered by

PIERPOINT, C. J. The plaintiff claims title to the property in question by virtue of a bill of sale executed to him by one Moncrief on the 21st day of June, 1876. Said bill of sale purported to convey to the plaintiff all Moncrief's personal property, including the nine head of cattle in question. In consideration of said bill of sale, the plaintiff agreed to pay, and afterwards did pay, certain debts which Moncrief was then owing. It appeared that some of these debts were evidenced by notes executed by Moncrief, on which Moncrief had forged the names of certain persons as indorsers, and had thereby obtained the money on them.

The defendant claimed to hold the cattle in question by virtue of attachments made by him on writs against Moncrief in favor of Moncrief's creditors.

On the trial in the County Court, the defendant claimed, and introduced evidence tending to show, that one of the inducements operating upon the minds of this plaintiff and Moncrief in making the said bill of sale was, to get up and out of the way the said forged paper, and thereby shield and protect Moncrief against criminal prosecution for said forgeries. If such was found to be the purpose and intent of the parties to that contract, it would clearly be illegal, and render the whole transaction void, notwithstanding there was a sufficient pecuniary consideration to have sustained the contract if the object and purpose had been purely a legitimate one. But it is said a party has the right to do a legal act although his motives may be bad. This is often true in civil

cases ; but in criminal proceedings, the intent of a party is a material consideration in determining whether an act is criminal or not ; and in a case like the present, the intent to do a criminal act, and to carry out an illegal purpose, vitiates the whole transaction ; and although courts will not interfere in aid of either party to such a transaction, but will leave them to their own devices, on the other hand, courts will not allow either party to set up such a transaction, either as the basis of a claim or by way of defence, as between such party and an innocent person who has obtained a legitimate claim that is at variance with the terms of such illegal contract. If the contract between this plaintiff and Moncrief was an illegal one for the reason claimed, then the property in question was subject to attachment by the creditors of Moncrief.

The same principles will apply to the transaction between Moncrief, Hopkins, and the plaintiff.

We think the defendant was entitled to a charge substantially in accordance with his first request, and that the court erred in not complying with it.

We think the court erred also in excluding the testimony offered as to the transaction between Moncrief and Hopkins, for the reasons before stated.

Other questions were raised upon the trial that it is not necessary to consider now.

Judgment reversed, and case remanded.