CAROLINE A. JACKSON

*v.*

GEORGE A. MINER *et al.*

*Filed at Ottawa, September 26, 1881—Rehearing denied March Term, 1882.*

1. FRAUDULENT CONVEYANCE—*gifts not valid as to then existing creditors.* The purchase of property by a man, for a woman, in his own name, and its conveyance to her without any pecuniary consideration, and in view of illicit intercourse with her, past and expected, will not be sustained as against the claims of creditors for debts owing at the time of the grant, which he at that time was unable to pay.

2. SAME—*as to subsequent creditors.* Where property was bought for another as a gift, and the person to whom the gift was made put in possession of the same in 1870, and the conveyance made to her and recorded in December, 1871, at which times the party making the purchase and gift was solvent and in good credit, it was *held*, that the gift could not be set aside by creditors for debts accruing to them in 1873 and 1874.

3. COMPROMISE—*setting aside for fraud.* A compromise by a debtor with his creditors, by which he paid fifty cents on the dollar of his indebtedness, and procured releases, will not be set aside, in the absence of proof of any false representations or fraud except his omission to inform his creditors that he had held the title to certain houses and lots, and had made a gift of them to another.

4. ALLEGATIONS AND DECREE—*must correspond.* On a creditor's bill to set aside certain voluntary conveyances as having been made to hinder and defraud creditors, a prior compromise of the debtor with the creditor, by which fifty per cent of his indebtedness was taken in full discharge, can not be set aside, and the settlement opened for fraud, where no such case is made in the pleadings, or shown by the proof.

5. ACKNOWLEDGMENTS OF DEEDS—*impeaching the certificate.* The testimony of a widow that she never joined with her husband in the execution of a deed, or acknowledged the same, is not sufficient to overcome the certificate of the officer as to her acknowledgment, and his testimony in support thereof.

APPEAL from the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

This is a proceeding in chancery, instituted by Miner and others, constituting a mercantile firm of Boston, as creditors of Eli D. Terry, deceased, to set aside certain deeds made by Terry and his wife, during his life, to Caroline A. Jackson, the appellant.

The first deed called in question is a conveyance of a lot and dwelling house known as 1393 Indiana avenue, in Chicago, alleged to have been made about December 21, 1871. The second is a conveyance of a house and lot in Chicago known as 134 Paulina street. The ground of attack is the allegation that these conveyances were made with intent to cheat and defraud complainants and other creditors of Terry. The property on Indiana avenue is alleged to be of the value of $8000, and that on Paulina street to be worth about $6000. It is charged that each of these deeds was made without any pecuniary, legal, or equitable consideration, and for the purpose of defrauding creditors. It is also charged that in the making and acknowledging of the deed for the

property on Indiana avenue, the wife of Terry was personated by some other woman, and really never joined in the same, or released her dower.

Caroline A. Jackson, answering, denies the fraud alleged in the bill, and denies most of its allegations, and vindicates the deeds in question, saying they were made "as so much paid to her towards an actual indebtedness to her by Terry." By leave of court she amended her answer, and set up that in November, 1870, she procured Terry, as her agent, to purchase for her the property on Indiana avenue, and that the same was then so bought by her with her own money, through him as her agent, and that he, without her knowledge, took the title in his own name, and that the title was afterwards conveyed to her merely because it was her property in equity; that his title was merely that of trustee, the purchase money being furnished by her.

By consent, the widow of Terry, Mrs. Caroline Terry, was made a party defendant, and she answered the bill, and filed a cross-bill against complainants and Caroline Jackson, stating the facts substantially as stated by complainants in the original bill, and charging that she never joined in the deed for the Indiana avenue property, and she claims dower in both properties. Issues were formed and proofs taken.

The circuit court, on final hearing, granted the relief sought in the original bill, finding that the deeds in question were made with intent to delay and defraud creditors, and setting the same aside as void against creditors, and also sustained the claim of Mrs. Terry for dower in both pieces of property,—in one, upon the ground that her release of dower was obtained by fraud, and in the other, upon the ground that she never joined in the deed or made the acknowledgment thereon indorsed. From each of these decrees Caroline A. Jackson appeals.

Messrs. ELDRIDGE & TOURTELLOTTE, for the appellant, after stating and discussing the facts, made the following among other points of law as applicable to the case:

The appellees, to maintain their bill, must show that they were existing creditors at the time of the conveyances, or they must show that the conveyances were actually made with the intent and purpose of defrauding subsequent creditors, and that the grantor was insolvent at the time. *Hudnal* v. *Wilder*, 4 McCord, 294; *Cole* v. *Tarier*, 31 Ala. 244; *Converse* v. *Hartley*, 31 Conn. 372; *Ward* v. *Hollins*, 14 Md. 158; *Thacher* v. *Phinney*, 7 Allen, (Mass.) 146; *Lynch* v. *Raleigh*, 3 Ind. 273; *Horn* v. *Volcano & Co.* 13 Cal. 62; *Lyman* v. *Cessford*, 15 Iowa, 229; 1 Grant Cases, 74; 11 Mo. 540; 88 Ill. 385; *Mixell* v. *Lutz*, 34 id. 386; *Moritz* v. *Hoffman*, 35 id. 553; *Gridley* v. *Watson*, 23 id. 186; *Woodrich* v. *Page*, 68 id. 157; *Griffin* v. *First National Bank*, 74 id. 259.

The mere fact of an indebtedness existing does not render a voluntary conveyance void, if there was no intent to defraud creditors. *Moritz* v. *Hoffman*, 35 Ill. 553.

It must be averred and proved that the grantor, at the time of the conveyance, was insolvent. *Patrick* v. *Patrick*, 77 Ill. 555.

In the case of a voluntary conveyance by an insolvent debtor, if the debtor pay the claim, the conveyance can not be set aside by the creditor for a debt subsequently contracted. *Hudnel* v. *Wilder*, 4 McCord, 294.

Even a conveyance without consideration, made to defraud creditors of the grantor, is valid against subsequent creditors, with notice of the first conveyance, and recording a deed is such notice. *Stivers* v. *Morse*, 47 N. H. 532; *McNeely* v. *Rucker*, 6 Blackf. 391; *Fowler* v. *Stoneum*, 11 Texas, 478.

As to the force of denial of signature, as against the acknowledgment before a notary, we refer to *Myers* v. *Parks*, 95 Ill. 410.

Messrs. BOUTELL and WATERMAN, for the appellees Miner, Beal & Hackett:

Although a deed for past cohabitation is good as between the parties, it is void as against creditors, being simply a voluntary gift. Even seduction is no consideration. 1 Parsons on Contracts, (5th ed.) 435; *Binnington* v. *Wallis*, 4 B. & Ald. 650; *Beaumont* v. *Reeve*, 8 Q. B. 483; *Wait* v. *Day*, 4 Denio, 443; *Sherman* v. *Barrett*, 1 McMullan, (S. C.) 162; *Hargrooves* v. *Meray*, 2 Hill's Ch. (S. C.) 222.

"If the donor is insolvent at the time of the transfer, the conveyance is generally deemed to be void as to subsequent creditors." Bump on Fraud. Con. (2d ed.) 314, 315.

The plaintiffs stood in the position of continuing creditors, and such creditors are not included in the rules which apply to merely subsequent creditors. Bump on Fraud. Con. 314, 315, (2d ed.); May on Fraud. Con. 52, 63, 64; Hunt on Fraud. Con. 50; *Holmes* v. *Pinney*, 3 Kay & Johns. Ch. 99; *Parish* v. *Murphree*, 13 How. 99; *Townsend* v. *Windham*, 2 Ves. Sr. 1; *Bay* v. *Cook*, 31 Ill. 343; *Case* v. *Phelps*, 39 N. Y. 164; 1 Am. Lead. Cases, 42; Story's Eq. Jur. secs. 361, 362; 1 Smith's Lead. Cases, 46, 47; Rev. Stat. 540, chap. 59, sec. 4.

Messrs. GAULT & Low, for the appellee Caroline Terry:

The question of law is this: Is a married woman's dower barred in the property conveyed by a deed in which she joined, when that deed is afterward attacked and set aside as having been designed to hinder, delay and defraud the creditors of the grantor? Upon this proposition the law is very clear, having been passed upon and decided in the negative by our Supreme Court on many different occasions. *Blain* v. *Harrison*, 11 Ill. 384; *Summers* v. *Ball*, 13 id. 483; *Stribling* v. *Ross*, 16 id. 122; *Gove* v. *Cather*, 23 id. 634; *Morton et al.* v. *Noble et al.* 57 id. 176.

Mr. JUSTICE DICKEY delivered the opinion of the Court:

Eli D. Terry, on the first of January, 1870, was a married man, living at Park Ridge, a village of some 400 to 600 inhabitants, located some ten or twelve miles north-west from Chicago, and was the proprietor of one of the largest clothing stores in the city of Chicago, keeping on hand usually a stock of goods of the value of about $50,000, and apparently doing a very successful business. His wife was an invalid; and though they had lived there nearly a year, his wife was, during that time, confined to the house, and so continued until some time in the spring of 1870. In March, 1871, he removed to Chicago, and took up his residence at 401 Monroe street, and there lived until his death, which occurred February 5, 1875. About the first of January, 1870, Caroline A. Jackson, then about 24 years of age, who had been supporting herself for about eight years, and managing her own affairs, engaged in teaching, book-keeping, etc., came to Park Ridge from Indiana, for the purpose of teaching for two months a school at that place, instead of her cousin, who had taught up to that time. She taught there until the first of March of that year, and then went to her friends in Ohio; returned to Chicago early in May of that year; boarded at a boarding house on the North Side until June of that year; then went to housekeeping in a house on Lincoln street; remained there until November of that year, and at that time moved to a house on Indiana avenue, and lived there until the fall of 1872, when she removed to a house on Paulina street, and was living in that house at the time of the commencement of this suit. The controversy in this suit relates to the properties mentioned as on Indiana avenue and on Paulina street.

The property on Indiana avenue, so far as the title papers show, was bought by Eli D. Terry, in November, 1870, through a contract of purchase, made about the time Caro-

line Jackson began to occupy the same. The deed was made
to Terry in pursuance to this contract, about January 1,
1871, and in December, 1871, Terry and wife conveyed this
property to Church, and Church conveyed the same to Caro-
line A. Jackson. The property on Paulina street was con-
veyed to Terry, by Henry Waller, by deed dated September
1, 1872, and was conveyed to Caroline A. Jackson by Terry
(his wife not joining), by deed dated December 3, 1874, and
acknowledged and delivered about January 23, 1875, being
less than two weeks before the death of Terry. These deeds
were all recorded soon after their delivery.

It is shown that no money or other value was paid at the
time of the deed by Terry to Church, or at the time of the
deed from Church to Caroline A. Jackson; and although a
note of over $8000, from Terry to Miss Jackson, was surren-
dered by her on the receipt of the deed for the property on
Paulina street, she testifies the surrender of this note was a
sham to conceal the real character of the transaction, and
that this note formed no part of the consideration for that
deed. This proof, standing alone, indicates that the deeds
through which Caroline A. Jackson derived title to both of
the properties in question, were merely voluntary, and with-
out any valuable consideration. And while such deeds were
valid as against Terry and his heirs, yet they may be avoided
by then existing creditors, if he were then unable to pay his
debts.

The substance of the story presented by the testimony of
Miss Jackson is, that equitably neither of these properties
ever was the property of Terry; that while for certain rea-
sons the contracts of purchase and conveyances were taken
in Terry's name, yet in fact the purchases were made by him
for her, and were paid for with her own money, given to
Terry for that purpose. She concedes that she received all
this money (and considerably more, which she applied other-
wise,) from Terry, and says it was so paid to her in part

satisfaction of a preëxisting indebtedness of Terry to her. When pressed for the source of this indebtedness, she says, in substance, that on about the 12th of February, 1870, she became engaged to be married to Terry, and that by their agreement they were to be married about the 1st of May of that year; that at that time, and upon one or more occasions between that time and the first of May, she and Terry had sexual intercourse with each other; and that during all that time she had no knowledge, thought or suspicion that Terry was a married man; and that when the time appointed for their marriage arrived, Terry failed and refused to marry her; and in consideration of her claim upon him for this breach of promise and deception, and also of past sexual intercourse, Terry agreed to pay her $30,000, and she agreed to accept the same in satisfaction of her wrongs; and that in part performance of that agreement he did pay to her, from time to time, large sums of money, in all as much as $16,000 to $18,000; and that the money with which each of these properties was bought was a part of these moneys thus received by her from Terry.

All this *may* be true; but in view of certain well established facts in the case, the story, in some essential respects, seems so extremely improbable that we can not adopt it as the truth.   We can not believe that on February 12, 1870, Caroline A. Jackson was not aware of the fact that Terry was a married man.   She was introduced to him very soon after her arrival at Park Ridge, and by her story he seems to have been very much interested in her from their first meeting. They met first at a church sociable in Park Ridge, and she says they had then and there a conversation of at least an hour, in which he requested that she should correspond with him.   A few days after, he attended public exercises in her school, and there renewed his request, and she assented to it and took his address in Chicago, and they exchanged letters from that time until February 12 (some five weeks), and in

the meantime she met him several times at church sociables, and upon two occasions he called on her at her boarding house, and this, without the knowledge of the lady with whom she boarded. She called in the meantime once or twice at his store in Chicago, being deeply veiled when she made these calls, and talking with no one else at the store; and at one of these visits she dined with him at one of the principal hotels in Chicago. She meanwhile attended frequent religious meetings and church sociables, and at the religious meetings sung in the choir. Terry appeared at some of these sociables, and when he did the ladies very generally inquired of him in relation to the health of his invalid wife. He usually spoke freely on that subject, and one witness speaks of one conversation, in which Miss Jackson took part, in which he spoke distinctly of his wife in her hearing and presence. His residence was one of the prominent buildings in the village, with spacious grounds and ornate shrubbery, and stood only a few blocks from the boarding house of Miss Jackson, and in plain view from the door of that house. He was regarded as one of the principal citizens, and was usually at home each night, going to his store in Chicago in the morning on the railroad train, and returning in the evening. It seems highly improbable that Miss Jackson, mingling with the pupils of the only school of the place, and with the ladies at most of the church sociables, and sitting in the choir at most of the religious meetings during these five or six weeks, in a village of not exceeding 600 inhabitants, could remain in such utter ignorance as to the *status* of a man who was making love to her so vigorously. The secrecy of his visits at her boarding house, of their correspondence, and especially of her visits to his store in Chicago, with the readiness with which she consented to visit his private rooms in Chicago on the day of the alleged marriage contract, all indicate that she was aware that it was illicit love that prompted his actions, and that she tolerated his

attentions when she was aware of the fact that he was a married man.

From all the circumstances, we are forced to believe that the marriage contract is a fiction; that the money lavished on this woman was merely in view of illicit intercourse, past and expected; that the house on Lincoln avenue was bought with that view, and used for that purpose, and so with the house on Indiana avenue, and also the house on Paulina street. That Terry was enamored of Carolina A. Jackson we do not doubt, nor do we doubt that this attachment continued until his death; but we are persuaded that the purchase of these houses for her in his name, and their conveyance, were mere gifts or grants, without such consideration as should shield them from the claims of creditors as to debts owing at the time of the grants, which he at that time was unable to pay.

As to the property on Paulina street, the grant was made when Terry must have known that he was insolvent, and the debts due to the complainants, which now remain unpaid, were then in existence. As against the complainants, to the extent of the unsatisfied part of their claims, the deed to Miss Jackson for the Paulina street property can not properly be allowed to stand. The decree of the circuit court in that regard is therefore affirmed.

Regarding the conveyance of the property on Indiana avenue as also a mere voluntary conveyance, it remains to inquire whether the complainant creditors of Terry are in a condition to enable them to call it in question. It is conceded that the debts now due to them accrued in 1873 and 1874. The property was bought for her and put in her possession in 1870, and the conveyance was made in December, 1871, and was on record. At that time he seems to have been solvent, and in good credit. It is said, however, that at that time Terry did owe these complaining creditors a considerable amount, and that early in 1872 Terry compromised

with his creditors at fifty cents on the dollar, and procured releases, and that although he afterward paid the fifty per cent agreed upon in the compromise, still the other half of the debt has never been paid, and in justice the estate ought to be held for that, because these creditors were ignorant of this conveyance to Miss Jackson, and would not have accepted the compromise if they had been aware of the true state of the case. To sustain this position, a case should be made upon the pleadings, and sustained by proof, which would authorize the setting aside of that compromise of 1872. No such case is made. The compromise was made chiefly on account of his losses by the fire of 1871. There is no proof of any false representations or other fraud on the part of Terry in making this compromise. The mere fact that he omitted to mention that he had held title to this property, and had made a gift of it to another, is not a sufficient basis for such a decree.

It is suggested that the fifty per cent embraced in that compromise which was paid, was not really paid, but was simply changed into another form through new credits,—in other words, that it was paid by goods afterwards sold on credit by the creditor to the debtor, and this debt was simply turned over and changed, by successive credits, in such way that the present indebtedness merely represents the fifty per cent agreed in the compromise of 1872 to be paid for the releases. The proof fails to show such a case. The supposed connection between the present debt and that of 1872, is not shown satisfactorily by the proofs.

As to the claim of Mrs. Terry for dower in this property, we think it ought not to be sustained. She denies that she ever joined in the deed of this property to Church, or released her dower therein. In this we think she is mistaken. The testimony of Barker, the notary, and the evidence of the certificate of the notary, show satisfactorily that she did execute the deed and make the acknowledgment.

The decree of the circuit court is therefore reversed, and the cause remanded for other and further proceedings in accord with the views here expressed.

*Decree reversed.*