TRADERS' NATIONAL BANK *vs.* CARL E. STEERE & others.

Suffolk.    December 6, 1895. — February 29, 1896.

Present: FIELD, C. J., ALLEN, KNOWLTON, MORTON, & LATHROP, JJ.

*Creditors' Bill — Contract void as against Public Policy in a Particular having no Reference to Creditors.*

If A. conveys property to his creditor, B., by a contract which is void as against public policy in a particular which has no reference to creditors, C., another creditor, who has no greater right to maintain an action against B. than A., cannot, after the contract has been fully executed, maintain a bill in equity against B., under Pub. Sts. c. 151, § 2, cl. 11, and St. 1884, c. 285, to reach and apply the property in payment of his claim.

BILL IN EQUITY, filed in the Superior Court, April 30, 1895, under Pub. Sts. c. 151, § 2, cl. 11, and St. 1884, c. 285, against

Carl E. Steere and James H. Wheeler, Jr., partners under the firm name of Stedman, Steere, and Wheeler, the National Bank of the Republic, the Blackstone National Bank, the National Hide and Leather Bank, the National Bank of Redemption, the Hamilton National Bank, and Marshall A. Phillips, to reach and apply property of Phillips, which could not be attached or taken on execution in an action at law.

The bill alleged that the plaintiff recovered judgment against Phillips to a certain amount, and held certain notes against him which were overdue and unpaid; that Phillips, at the time of making the agreements and conveyances hereinafter set out, was financially embarrassed and insolvent, and was then known to the defendants to be insolvent; that Phillips, in November, 1892, was indebted to the defendant banks, and to other parties to the plaintiff unknown, upon certain promissory notes and drafts which Phillips had procured to be discounted by the banks and the other parties, through the agency of Stedman, Steere, and Wheeler, who were a firm of note brokers; that the discounts had been procured by means of representations made in writing and signed by Phillips, purporting to be a correct statement of his financial condition, which statement was given by him to Stedman, Steere, and Wheeler to be used by them in disposing of his said notes and drafts; that the statement was so used and shown by them, and on the faith of it the defendant banks took the notes and drafts, and parted with their money to Phillips; that the statement and the representations therein were false, and were made and used as false and fraudulent pretences by Phillips to procure money; that Phillips in November, 1892, knew that he was insolvent, and agreed with the plaintiff to make a distribution of his assets ratably among all his creditors, including the plaintiff, and to assign all his property for the equal benefit of all his creditors, and promised the plaintiff that he would not prefer any creditor; that Phillips thereafter, because and in pursuance of the illegal agreement made with the defendant banks and others, as hereinafter set forth, did not make an assignment for the equal benefit of all his creditors, including the plaintiff, but did transfer to the defendants all his property upon the agreements and in the manner hereinafter set forth; that in December, 1892,

Phillips agreed with Stedman, Steere, and Wheeler, and the defendant banks, and the other parties unknown, to make conveyance to the banks and other parties of real estate owned by Phillips situated without the Commonwealth, and also to transfer to the banks and other parties stocks and bonds in certain corporations named, and certain other choses in action; and in consideration of said transfers and conveyances Stedman, Steere, and Wheeler, and the banks and other parties, severally agreed to surrender to Phillips, or his agents, the notes and drafts, and the signed statement containing the false representations as to his condition, which „were in the possession of Stedman, Steere, and Wheeler, and the banks, and other parties, and to conceal the false and fraudulent representations which Phillips had made, and never to prosecute Phillips or procure his prosecution for obtaining money by false pretences, or for any other offence committed by him in the transactions, but to deliver over to Phillips or his agents all evidences held by Stedman, Steere, and Wheeler, and the banks and other parties, of said false and fraudulent pretences and representations, and never to give evidence thereof; that Phillips did make the transfers and conveyances to the banks and other parties as agreed upon; that the banks and other parties received the title to the real estate, bonds, and choses in action, and surrendered to Phillips all the notes and drafts by them held, and procured the surrender by Stedman, Steere, and Wheeler of said statement, and surrendered to Phillips all evidences of false and fraudulent pretences and representations, as agreed upon; that the banks and other parties mutually agreed to divide the real estate, bonds, and choses in action ratably between the banks and the other parties severally who participated in the agreement; that the banks and unknown parties, or some of them, now hold the title to the real estate, or the proceeds thereof, and the choses in action, and bonds, or the proceeds thereof; that the transfers and conveyances and the agreement between Phillips and the banks and unknown parties were illegal and prohibited, and in fraud of the plaintiff's rights in the premises, and as a creditor of Phillips; and that the plaintiff was entitled to take the title to the real estate, bonds, and choses in action, now held by the banks and unknown parties as the property of

Phillips, and to apply the same on the promissory notes and the judgment.

The prayer was, among other things, for a decree that the banks should hold the title to the property as trustees for the plaintiff; that the banks should transfer the same and any proceeds therefrom to a master, whom the court should appoint, and that the master should take title to the property and sell the same, and out of the proceeds pay the plaintiff the amount of Phillips's indebtedness, returning any surplus to the banks.

The defendants demurred to the bill, and assigned as grounds therefor want of certainty, want of equity, that the remedy was at law, that the equity of the plaintiff was not superior to that of the defendants, and that there was no sufficient allegation of fraud.

At the hearing, the demurrer was sustained, and the bill dismissed; and the plaintiff appealed.

*W. E. Russell,* ( *W. R. Bigelow* with him,) for the plaintiff.

*F. E. Fitz,* for the Blackstone National Bank, submitted the case on a brief.

*W. A. Sargent,* for other defendants.

KNOWLTON, J.    Under Pub. Sts. c. 151, § 3, this court has jurisdiction in equity to reach and apply in payment of a debt any property of a debtor liable to be attached or taken on execution in a suit at law against him, and fraudulently conveyed by him with intent to defeat, delay, or defraud his creditors. Under cl. 11, § 2, of the same chapter, and under St. 1884, c. 285, it has jurisdiction to reach and apply in payment of a debt " any property, right, title, or interest, legal or equitable, of a debtor, within this State, which cannot be come at to be attached or taken on execution in a suit at law against such debtor."    If the property alleged to be in the hands of the defendants other than Phillips and Steere and Wheeler were property which the plaintiff had a right to take from them and apply in payment of its claims against Phillips, this court would have jurisdiction to give the plaintiff relief.

Upon the allegations of the bill, the contract whereby Phillips transferred his property to the other defendants was illegal, in that it provided for the suppression and concealment of evidence of a crime, and included an agreement not to prosecute him.

Such a contract is against the policy of our law, and cannot be enforced in a court of justice. *Atwood* v. *Fisk*, 101 Mass. 363. *Bryant* v. *Peck*, 154 Mass. 460. But when it is fully executed, neither party to it can maintain an action to set it aside, or to recover back anything that has passed under it. *Myers* v. *Meinrath*, 101 Mass. 366. *Faxon* v. *Folvey*, 110 Mass. 392. *Atwood* v. *Fisk*, *ubi supra*.

It becomes necessary to inquire whether there are allegations in the bill to show that the plaintiff has any better right than Phillips to maintain an action. The mere fact that the contract was illegal gives no such right. The conveyance of property by a contract which is void as being against public policy in a particular which has no reference to creditors does not necessarily give creditors a right to pursue the property after the contract has been fully executed. Such a contract may or may not be fraudulent as against creditors. If it is, they may set it aside ; if it is not, they cannot. We may assume, in accordance with the decisions in *Weeks* v. *Hill*, 38 N. H. 199, and in *Clark* v. *Gibson*, 12 N. H. 386, that if an insolvent person appropriates a considerable portion of his property for his own benefit, in a way forbidden by law, such an appropriation is *ipso facto* a fraud upon his creditors. Money taken by an insolvent person from his estate and paid to compound a felony is disposed of fraudulently as against creditors, and may be treated by them as still applicable to the payment of their debts. But the payment of one or more creditors in full by way of preference is not fraudulent at common law. It is not a misappropriation of the debtor's property. *Sawyer* v. *Levy*, 162 Mass. 190. Such a payment does not become fraudulent as against creditors merely because the creditor, when he receives payment and gives up the evidence of his debt, illegally promises as a part of the transaction to compound a felony of which the debtor is guilty. The added illegal element in the contract is condemned by the law because it is against public policy, but it does other creditors no harm. The money paid is no more than is due for the debt, and nothing is taken from the other creditors for an illegal use. See *Oriental Bank* v. *Haskins*, 3 Met. 332, 340 ; *Harvey* v. *Varney*, 98 Mass. 118, 120. They are affected as all other members of the community are affected, and not otherwise. If

it were possible to do so, they would have no right to use the debtor's liability to punishment for his crime as a means of obtaining an advantage to themselves. *Taylor* v. *Jaques*, 106 Mass. 291. *Morse* v. *Woodworth*, 155 Mass. 233.

In the present case the plaintiff corporation does not allege that the conveyance of Phillips to other defendants was made " with intent to defeat, delay, or defraud the creditors." It therefore cannot rely upon an express intent to defraud them. There are not even allegations of fact from which such an intent could fairly be inferred. The plaintiff's case must stand solely upon the effect in law of such a conveyance as is set forth. Now it is alleged that Phillips was indebted to each of the other defendants except Steere and Wheeler upon certain notes and drafts discounted for him, and that he agreed to transfer to them certain property, and they severally agreed to surrender to him the notes and drafts, and the writing which contained the evidence of his criminal fraud, and to conceal his fraud, and never to prosecute him for it. It is further alleged that this contract was executed on both sides according to its terms, and that the property was divided ratably among those to whom it was transferred. A fair interpretation of this part of the bill is that the proceeds of the transfer were accepted in payment and discharge of Phillips's indebtedness to the defendants, and it is entirely consistent with the allegations — indeed, it seems probable from the allegations — that the whole property was not enough in value to pay these claims in full. Certainly there is no allegation that there was more than enough to pay them, or that any of the debtor's property was misappropriated by using it unlawfully to obtain an advantage for himself. The law will not impute to a debtor, by reason of such a transaction, an intent to defeat, delay, or defraud his creditors, nor treat the transaction as a violation of their legal rights.

The judgment in *In re Mapleback*, 4 Ch. D. 150, is in accordance with the view which we have expressed. In that case a debtor owed one of his creditors one hundred pounds, and forged his name upon a bill of exchange for one hundred pounds more, which was discounted at a bank. Just before the bill of exchange became due, the debtor wrote to the creditor confessing his crime, and entreating him to furnish the money to enable

the debtor to take up the bill and conceal the crime, and offering to make a conveyance of property as security for the entire indebtedness if he would consent to the arrangement. The creditor furnished the money, and took the conveyance as security for the amount, and also for his former debt. The chief judge in bankruptcy held that the transaction could be avoided by the assignee in insolvency of the debtor, but on appeal the Lords Justices, without expressly deciding whether the transaction was illegal, held unanimously that, if it was, the assignee could not take advantage of it, because it was not a fraud upon creditors nor a fraud against the bankruptcy law.

We are of opinion that the bill before us does not state enough to show that the transfer of the debtor's property was fraudulent as against creditors, and that therefore no cause is shown for setting it aside. If it were avoided on the ground of illegality of another kind, the property would be found in the hands of the defendants, and the plaintiff would have no equity superior to that of the defendants or of other creditors in regard to the appropriation of it to the payment of Phillips's debts. As is expressly held in *Weeks* v. *Hill*, 38 N. H. 199, the defendants would not be subjected to a penalty, and be deprived of their equities as creditors, because of their illegal contract in reference to the debtor's crime.

The plaintiff has no standing to maintain its suit under Pub. Sts. c. 157, on the ground of a fraudulent preference, because it is not proceeding under that statute. Even if the suit were by an assignee in insolvency, a fraudulent preference could not be set aside in insolvency proceedings commenced nearly two years after the conveyance was made.

*Bill dismissed.*