RANDALL E. SMITH, *ET AL.*, PLAINTIFFS-APPELLANTS, v.
CLIFFORD L. WHITMAN, DEFENDANT-RESPONDENT, v.
PAUL A. VIVERS, DEFENDANT.

Argued December 17, 1962—Decided March 4, 1963.

398

*Mr. James A. Major* argued the cause for plaintiffs-appellants (*Messrs. Major and Major,* attorneys).

*Mr. Bruce H. Losche* argued the cause for defendant-respondent (*Messrs. Losche and Losche,* attorneys).

The opinion of the court was delivered by

WEINTRAUB, C. J. These cases arose out of embezzlements by Paul A. Vivers, an attorney (now disbarred, *Vivers, In re,* 36 *N. J.* 531 (1962)), of property of clients. Defendant Whitman, who is a nephew of Vivers, suffered losses of about $100,000. He obtained from Vivers assets worth about $39,000 which plaintiffs, also victims of Vivers, sought to recover in these proceedings.

The complaints seemingly advanced two theses: (1) that Vivers held specific properties in trust for plaintiffs and transferred those properties to Whitman who took without consideration and with knowledge of the trust; and (2) that the transfers resulted in insolvency and were made and accepted "for the purpose of defrauding creditors."

At the trial funds were not traced in support of the first thesis stated above, that trust properties were transferred to

Whitman. Rather the trial was upon the claim of a fraudulent conveyance and apparently also of an unlawful preference. The trial court found the transfers were neither in fraud of creditors nor an unlawful preference, but held the transaction was vitiated by "duress."

The finding of duress was based upon Whitman's testimony on cross-examination that at one point during his efforts to obtain satisfaction, he threatened to go to the prosecutor if Vivers did not make good. In their brief filed with the trial court after the testimony was closed, plaintiffs projected for the first time the claim that the transfers should be voided for "duress," to which Whitman replied accurately that no such issue had been tried. In fact there was no testimony by Vivers that he yielded to any threat.

The Appellate Division declined to accept duress as an independent basis for relief but held it could sustain the charge of fraudulent conveyance. More specifically, it held that duress would negate "good faith" required by the definition of "fair consideration" in section 9 of the Uniform Fraudulent Conveyance Act, *R. S.* 25:2–9. As to this, the Appellate Division noted that the answer would ultimately depend upon the impact of the threat upon Vivers, a subject which, as we have said, was not explored when Vivers was on the stand.

The Appellate Division then considered still another thesis, that there may have been an illegal agreement to compound Vivers' offense, and held that such an agreement would also negate "good faith."

The Appellate Division concluded that Whitman should prevail as to assets he received prior to his threat to complain to the prosecutor, but that as to the assets thereafter received, the matter should be remanded for proceedings limited to the subject of "good faith," as to which plaintiffs would prevail, as we have said, if it should be found that Vivers' will was overborne by the threat of criminal prosecution or that there was an illegal agreement to compound Vivers' crime. *Smith v. Whitman*, 75 *N. J. Super.* 228 (*App. Div.* 1962).

Plaintiffs petitioned for certification, to which Whitman replied that he too was dissatisfied. We granted the petition. 38 *N. J.* 318 (1962).

## I.

We start with the proposition that a preference as such is not a fraudulent conveyance. True, a creditor who collects from an insolvent debtor fares better than other claimants. Yet if the transfer were set aside in favor of another creditor, there would be but a substitution of one preference for another. For that reason a preference cannot be undone by a competing creditor whether the preference was obtained through judicial process or by a transfer from the debtor, and the Uniform Fraudulent Conveyance Act did not alter that proposition. *Rednor v. First-Mechanics National Bank,* 131 *N. J. Eq.* 141 (*E. & A.* 1942) ; *Hersh v. Levinson Bros., Inc.,* 117 *N. J. Eq.* 131 (*E. & A.* 1934) ; *Atlantic Refining Co. v. Stokes,* 77 *N. J. Eq.* 119 (*Ch.* 1910), affirmed o. b. 78 *N. J. Eq.* 301 (*E. & A.* 1911) ; 1 *Glenn, Fraudulent Conveyances and Preferences* (*Rev. ed.* 1940) § 289, *p.* 488.

The rule obtains as well in equity. *Monmouth Lumber Co. v. Indemnity Ins. Co. of North America,* 21 *N. J.* 439 (1956), is not to the contrary. There it was held that a fund interpleaded by a surety, representing the amount of its liability, will be distributed ratably among all of the claimants to it. Equality is equity, as one of the maxims goes, and in harmony with it, equity will usually parcel a common fund *pro rata* among all creditors, but equity will not reach out to avoid a preference in order thereby to create a fund to which to apply its principle of equality in distribution. Whether equity here follows the law because of the difficulty of achieving equality in a suit involving less than all assets and all creditors or because it is not persuaded that a preference is so plainly unjust that it should countermand the principle of law, the fact is that equity does respect the title or lien a creditor obtains preferentially.

■ But equality in distribution has an obvious appeal and hence legislation has been adopted to achieve it within stated limits of time and circumstances. So our Legislature has provided that where a debtor makes an assignment for the benefit of creditors, the assignee may attack a preference acquired within four months of the general assignment. *N. J. S.* 2A:19–3. With respect to insolvent corporations, preferences are declared "null and void as against creditors" in the circumstances set forth in *N. J. S. A.* 14:4–2, see *Central-Penn National Bank v. New Jersey Fidelity and Plate Glass Ins. Co.*, 119 *N. J. Eq.* 265 (*Ch.* 1935); and all liens obtained by legal proceedings within four months of an action for the appointment of a receiver are null and void as to the receiver. *N. J. S. A.* 14:14–25. Finally, we refer to the federal bankruptcy act, 11 *U. S. C. A.* § 96, under which a preference may be set aside if made or suffered by an insolvent debtor within four months of the filing of a petition by or against him. These statutes do not avoid a preference simply to permit another creditor to capture it for his sole gain but rather to the end that all general creditors, including the one preferred, may share ratably in all the assets of the debtor.

■ Here the transfers to Whitman might have been voided for the benefit of all claimants by an involuntary petition in bankruptcy. The parties did not however so proceed. Instead they attacked the transfers as fraudulent conveyances, and we gather that at some point in the trial they asserted alternatively that if the transfers should be found to be preferences and hence beyond the condemnation of the fraudulent conveyance law, still the court should set them aside for the benefit of all creditors. As we have already said, the rule is that preferences are vulnerable only in the statutory proceedings to which we have referred. Hence plaintiffs cannot succeed in an attack upon a mere preference in the absence of some circumstance which takes the case outside the usual rule.

■ Plaintiffs say this case is sufficiently exceptional in that they and Whitman are not conventional creditors of

Vivers but rather are victims of his tortious wrongs, and for that reason none should be able to obtain or accept a preference. We are not referred to any authority which supports that proposition. Surely each claimant is a "creditor" within the Uniform Fraudulent Conveyance Act, *R. S.* 25:2–7, which defines "creditor" as a person "having *any* claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent." We are not persuaded that the source or origin of liabilities is rationally related to the subject of preference. We repeat that we are not dealing with a transfer of trust assets or of property to which trust assets have been traced. Rather the case is before us upon the premise that the property transferred was the property of Vivers, unburdened by equitable interests in others. Upon that premise we see no reason to deny the application of the usual doctrine relating to preferences and hence plaintiffs must fail if all that appears is that Whitman accepted a preference.

## II.

This brings us to the final question, whether the preference was obtained in a manner so unfair as to other creditors that it should be held to be a fraudulent conveyance within the meaning of the uniform statute and hence void as to all creditors, or if not, that the court should charge Whitman with an equitable obligation to share the fund with other claimants.

We here refer, of course, to the subjects of "duress" and "illegal agreement" arising from the threat to go to the prosecutor. It will be recalled that the Appellate Division held that duress or an illegal agreement, if proved, would negate the "good faith" required by the uniform act, thus making the transfer fraudulent as to the other claimants.

The term "good faith" appears in the definition of "fair consideration" in *R. S.* 25:2–9, which reads:

"Fair consideration is given for property or obligation:

a. When in exchange for such property or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied; or

b. When such property or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property or obligation obtained."

The statute does not define "good faith." "Good faith" ordinarily imports honesty of purpose and integrity of conduct with respect to a given subject. See generally, 18A *Words and Phrases,* "Good Faith" (*Perm. ed.* 1956). Although, as we have noted, "good faith" appears in the definition of "fair consideration," it is not confined to the question whether the consideration paid was believed to be a "fair" equivalent. We think "good faith" is required with respect to the larger question whether the transfer was a fraud upon creditors within the condemnation of the uniform act. So good faith is lacking if the transferee knowingly aids the debtor in the debtor's purpose to secrete assets for the debtor's enjoyment, *Hersh v. Levinson Bros., Inc., supra* (117 *N. J. Eq.,* at *p.* 134), or joins in a plan designed solely to hinder creditors even though the transfer may be said to be supported by a sufficient consideration, *cf. Equitable Life Assurance Society v. Patzowsky,* 131 *N. J. Eq.* 49 (*E. & A.* 1942). On the other hand, since a debtor may prefer a creditor notwithstanding that other creditors are thereby defeated, the transferee does not lack good faith because he knew his debtor's purpose to prefer or because he actively sought the preference.

Since the debtor does not transgress the statutory ban by a transfer in payment of an existing debt even though he intends thereby to prefer a creditor, the question becomes whether such a transfer should be deemed vulnerable for want of good faith because of the additional circumstance that the creditor offered improper pressure or inducement. We find no definitive answer in the language of the uniform act, including the cryptic terms of *R. S.* 25:2–17:

"In any case not provided for in this article, the rules of law and equity including the law merchant, and in particular the rules relating to the law of principal and agent, and the effect of fraud, misrepresentation, duress or coercion, mistake, bankruptcy or other invalidating cause shall govern."

There are a number of cases to the effect that an illegal consideration will not support a conveyance as against creditors. See Annotation, 34 *A. L. R.* 1297 (1925). Those cases, however, do not bear meaningfully upon the issue before us since they turned, not upon "good faith," but upon a finding that there was no consideration.[1] In short, in those cases the estate of the debtor was diminished by the diversion of assets to an end which the law denounces as nothing of bargainable value. An agreement to compound a crime would be of that character if the transferee had no money claim against the debtor or exacted a sum in excess of his lawful demand. But in the case before us the transfers to Whitman were supported dollar for dollar by Whitman's incontestable claim against Vivers and hence, unlike the cases just referred to, the claimed illegality does not involve the lack of adequate consideration.

The question then is whether, if Whitman also agreed to protect Vivers from criminal liability, the additional promise so invaded the interests of other creditors that the transfer should be invalidated on that account. We find very little treatment of the subject in the authorities.

---

[1] Upon this thesis it was held a creditor could reach a transfer made in consideration of liquor sold to the debtor in violation of law, *Geary v. Schwem*, 280 *Pa.* 435, 124 *A.* 630 (*Sup. Ct.* 1924) ; moneys lost in gambling, *Tokar v. Redman*, 138 *Cal. App.* 2d 350, 291 *P.* 2d 987 (*D. Ct. App.* 1956) ; moneys paid in consideration of illicit cohabitation, *Jackson v. Miner*, 101 *Ill.* 550 (*Sup. Ct.* 1882) ; *Wait v. Day*, 4 *Denio* (*N. Y.*) 439 (*Sup. Ct.* 1847) ; *Hargroves v. Meray*, 11 *S. C. Eq.* (2 *Hill*) 222 (*Ct. App.* 1835) ; conveyances for illegal promises affecting marital obligations, *Weeks v. Hill*, 38 *N. H.* 199 (*Sup. Jud. Ct.* 1859) ; *Morgan v. Potter*, 17 *Hun* (*N. Y.*) 403 (*4th Dept.* 1879). So a transfer illegal because made for confederate money was set aside. *Weeden v. Bright*, 3 *W. Va.* 548 (*Ct. App.* 1869). See also *Jose v. Hewett*, 50 *Me.* 248 (*Sup. Jud. Ct.* 1861), where the transaction would by indirection defeat a statutory ban against a bank director's being surety for the cashier; and *Kolb v. Mall*, 187 *Iowa* 193, 174 *N. W.* 226 (*Sup. Ct.* 1919), where the consideration was the release of the inchoate right of one spouse in the property of the other, in violation of a statute prohibiting the release.

In *Marbury v. Brooks,* 20 *U. S.* (*7 Wheat.*) 556, 5 *L. Ed.*
522 (1822), the debtor, who had forged paper held by banks,
conveyed properties to his father-in-law in trust to pay the
banks. The court held that the debtor had the right to prefer
those creditors, and that the transfer was not fraudulent
merely because the debtor hoped that the banks, if satisfied
by payment, would not prosecute him. The court noted that
the facts "show no agreement made at any time to forbear
to prosecute, nor that the interest of the creditors would be
in any manner affected by the institution of a prosecution,
and carrying it on to the conviction of the offender." (*p.*
528.) The court added, perhaps as *dictum,* that the convey-
ance would be void if there was "some engagement, express or
implied, to suppress the prosecution." (at *p.* 528.)

In *Laing v. McCall,* 50 *Vt.* 657 (*Sup. Ct.* 1878), the
father-in-law of a forger took a conveyance in consideration
of the father-in-law's undertaking to clear up the liabilities.
It was held that if the arrangement was made to the end
that the forged papers be gotten out of the way to shield the
debtor from prosecution, the contract would be illegal and the
property would be subject to attachment by the debtor's
creditor. That case may be distinguishable on the ground
that the grantee, who was not an existing creditor or acting
as trustee for such creditors, furnished fresh consideration as
part of an arrangement intended to hinder creditors. In
other words the father-in-law could not rest upon the right of
an existing creditor to seek and accept a preference.

The issue was squarely presented in *Traders' National
Bank v. Steere,* 165 *Mass.* 389, 43 *N. E.* 187 (*Sup. Jud. Ct.*
1896). The court held the presence of the illegal promise
did not make fraudulent a conveyance which was supported
in full by an antecedent indebtedness. The court commented
that while the illegal promise was against public policy, it
did not constitute a private offense against other creditors,
and hence to deprive the transferee of the property would
merely penalize him in favor of another creditor who could

show no superior equity.[2]  This holding was approved by *dictum* in *Merchants Bank v. Page,* 147 *Md.* 607, 128 *A.* 272 (*Ct. App.* 1925).

■ We incline to the view that a creditor should not be permitted to gain an advantage over other creditors by such illegality notwithstanding that the value of the transfer does not exceed the amount of his unquestionable claim.  Whether a transfer so induced should be deemed to be void as in the case of a fraudulent conveyance, as the Appellate Division held, or whether the property should be held to be a common fund in which the transferee too may share, we need not decide.  The reason is that we cannot find an illegal agreement or a sufficient suggestion of one to warrant a remand for an inquiry into the subject.

■ Whitman, a layman, threatened to complain to the prosecutor.  There was, however, no intent to squeeze a preference at the expense of other claimants.  The testimony shows that Vivers, in response to his own attorney in the presence of Whitman and Whitman's attorney, insisted he had no other obligation beyond a secured indebtedness to a bank.  The Appellate Division found the "record is clear that Dr. Whitman knew nothing of Vivers' other obligations" (75 *N. J. Super.,* at *p.* 237).  We accept that finding.  Whitman could reasonably have believed that Vivers selected only his property for plunder in the hope he would accept the loss because of their familial relationship.

Surely there is no reason to suppose the threat became a promise or an agreement to compound Vivers' crime in violation of *N. J. S.* 2A:97–1 or an agreement otherwise violative

---

[2] We note that the Appellate Division seems to have read *Wolff v. Perkins,* 254 *Mass.* 10, 149 *N. E.* 691 (*Sup. Jud. Ct.* 1925), to dilute the value of *Steere.*  We do not so read *Wolff.*  On the contrary *Steere* is there cited with approval.  All that *Wolff* held is that an executory contract for the compounding of a crime being illegal, the court will not aid either party to it.  It did not quarrel with the holding of *Steere* that a completed transaction, supported by adequate consideration, was not fraudulent because the creditor additionally promised not to prosecute.

of public policy in this area. See 6A *Corbin, Contracts* § 1421, *p.* 355 (1962). Not only were reputable counsel present, but an agreement would have meant little to Vivers for he knew that his victims were many, and that paying Whitman could avoid for only a short while the full disclosure of all of his offenses including the offense against Whitman.

It may well be that even though there is no bargained promise to suppress an offense, yet a creditor who deliberately sparks the hope of forbearance in order to induce a conveyance should not be permitted as against other creditors to retain what he thereby gained. And it may be that this should be so even though the creditor is unaware, as we are sure Whitman was unaware, that the criminal process may not be invoked to achieve a civil recovery. But we should not question the transfer in such circumstances unless it is clear the debtor was induced to make the transfer by the expectation that his crime would be concealed, and as we have said, Vivers could not persuasively maintain that such was his expectation.

For like reasons we conclude the case should not be remanded to explore the subject of duress. We believe that although the debtor may be unable to avoid a conveyance because of the fullness of the consideration he received, see 5 *Williston, Contracts* §§ 1615–16, *pp.* 4514–16 (*rev. ed.* 1937), his creditors should receive appropriate redress from a preference so exacted. Here, as the Appellate Division held (75 *N. J. Super.,* at *pp.* 241–42), there was no duress unless the threat to complain to the prosecutor deprived Vivers of the free exercise of his will, and the remand was ordered to examine into the impact of the threat upon him. We see no real possibility that Vivers could credibly say he was thus overwhelmed.

Vivers of course must have felt pressed to meet Whitman's demands. The reason, however, was not the threat to tell the prosecutor but rather that Vivers, being a lawyer, knew he could not survive disclosure in any forum. The threat would have had the same impact if it were the impec-

cable one to start a civil suit, for he knew the impossible extent of his involvements and that revelation anywhere had to bring down his house of fraud. Hence, realistically, the transfers must have been made, not because of the specific content of the threat, but because Whitman could not be delayed. When we add that Whitman was unaware of other claimants and hence had no purpose to gain at their expense, we are satisfied the cases should be disposed of upon the issues which were in fact tried.

The judgment of the Appellate Division is accordingly modified and the matter remanded with directions to the trial court to enter judgments for defendant. No costs.

*For modification*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*Opposed*—None.