JOHNS & SANDY ET AL., APPELLANTS, V. IRA REED, SHERIFF, APPELLEE.

FILED NOVEMBER 10, 1906. No. 14,465.

1. **Sales: REPLEVIN.** The creditors of a vendor who has made an illegal sale of his property cannot seize the same unless they can show that such transfer was an invasion of, and prejudicial to, their rights.

2. ———: **VALIDITY.** Ordinarily, a sale made with the knowledge and intention of both parties that the subject matter thereof shall be used for an illegal purpose, is illegal; but where such use is not in contemplation of the parties at the making of the sale, a subsequent use of the subject matter for an unlawful purpose does not render the sale illegal.

3. **Conditional Sales: VALIDITY.** A condition in a contract of sale, whereby the title is to remain in the vendor until the full amount of the contract price is paid, is void as against purchasers and judgment creditors of the vendee in actual possession, unless reduced to writing, signed by the vendee, and a copy thereof filed with the county clerk or register of deeds of the proper county. Comp. St., ch. 32, sec. 26.

APPEAL from the district court for Box Butte county: JAMES J. HARRINGTON, JUDGE. *Reversed as to defendant Reed.*

*William Mitchell* and *R. C. Noleman,* for appellants.

*W. G. Simonson, B. F. Gilman* and *Wilson & Brown,* contra.

ALBERT, C.

This is an appeal from a judgment rendered in an action of replevin brought against the sheriff to recover possession of certain property which he had taken under certain orders of attachment issued against one Tyler, who is not a party to this suit. On and prior to the 16th day of June, 1903, Tyler was a licensed saloon-keeper in the city of Alliance, and the owner of the saloon fixtures and stock of liquors, etc., in controversy in this action. At about that date he entered into negotiations with Johns & Sandy, the plaintiffs, looking to a sale of his stock and fixtures to them. Previous to that time the plaintiffs had been engaged in the saloon business in the state of Colorado, where, according to certain evidence, which was received without objection, a saloon license is transferable by assignment. The parties finally reached an agreement and a sale of the property from Tyler to the plaintiffs was consummated in the city of Denver. The nominal consideration paid by the plaintiffs was $4,864, and of this amount $3,864 was paid in cash. The remainder was evidenced by a promissory note which was deposited with a certain bank with the understanding that it was to be paid in case the plaintiffs were permitted to continue the saloon business under the license previously issued to Tyler, otherwise to be returned to the plaintiffs. The intervener Coors at the time of the transaction was the proprietor of a brewery in the city of Denver, and furnished the plaintiffs the money necessary to pay the cash consideration, upon their agreement to buy the beer required in their business from him, and took a mortgage on the stock and fixtures as security for the money advanced. The plaintiffs at once took possession of the property and, for some days at least, continued the saloon business

without taking out a license in their own names. About the first day of July, 1903, they were notified that they would not be permitted to conduct the business without taking out a license. There is evidence tending to show that as soon as it was brought to the notice of the intervener, Coors, that the plaintiffs could not carry on the business without taking out a license in their own names he ordered them to close the saloon and do no further business until they had procured such license. The evidence also shows that, in order to enable them to take out a license, Coors advanced the plaintiffs the further sum of $1,500, taking a second mortgage on the property in question. Both his mortgages were duly filed for record on the first day of July, 1903. Sometime before the sale by Tyler to the plaintiffs, he had negotiated with the National Cash Register Company, another intervener, for the purchase of a cash register. He finally telegraphed this intervener to send him the register, and they forwarded it by express. It is part of the property which was transferred to the plaintiffs by Tyler, and is one of the articles taken under the writ of replevin in this case. This intervener alleges that the sale was made to Tyler on condition that he should sign a conditional contract whereby the title should not pass until the price of the register had been paid, but that Tyler fraudulently, and without consent of this intervener, obtained possession of the register from the express company, and that no sale thereof was in fact made to him. The orders of attachment under which the defendant sheriff claims the right of possession issued in suits brought on debts which existed against Tyler at the time of his sale to plaintiffs, and were levied on the 20th day of July, 1903. At the conclusion of the evidence the court instructed the jury to return a verdict in favor of the defendant sheriff for the aggregate amount of the writs under which he had attached the property, but in favor of the plaintiffs and against the intervener, the National Cash Register Company. The plaintiffs and both interveners appeal.

We gather from the briefs filed in this court that the trial court proceeded on the theory that the sale made by Tyler to the plaintiffs was illegal and void as to the existing creditors of the former, because made with the understanding that the plaintiffs should use the subject matter of the sale for an illegal purpose, namely, the sale of intoxicating liquors in this state without a license in their own names, but under a license theretofore issued to their vendor. Assuming that the sale was made to the plaintiffs for that purpose, still we think the sheriff, as the representative of the attaching creditors, is in no position to assail it. In *Hall v. Hart*, 52 Neb. 4, it was held that "an insolvent debtor, or one in failing circumstances who parts with money or property under a contract in violation of statute, or which is void as against public policy, will be held to stand in the same position as one making a voluntary conveyance in fraud of creditors." The foregoing rule is more favorable to creditors than was required by the facts in that case, and it may be doubtful whether it can be sustained on authority. But a reexamination of the question is not required at this time, because the facts in the present case do not bring it within that rule, but rather within that announced in *Brower v. Fass*, 60 Neb. 590. In that case the court, dealing with a state of facts somewhat similar to those involved in the *Hall* case, *supra*, as well as those in the case at bar, said:

"But the illegality of the sale was not alone sufficient to justify the sheriff in levying upon the property as the property of Huette. It was held in *Hall v. Hart*, 52 Neb. 4, that, where property of an insolvent debtor, or one in failing circumstances, has been transferred to another by an illegal sale, it will be treated as though it had been disposed of without consideration and in fraud of the rights of the vendor's creditors. Counsel for Brower insist that we shall now go a step farther and declare that creditors of a solvent vendor may appropriate to the satisfaction of their claims property which has passed

out of his hands in execution of an illegal contract of sale. No decision is instanced in support of this contention, and we have been unable to find any that gives it the least countenance. In *Traders Nat. Bank v. Steere,* 165 Mass. 389, 393, it is said: 'The conveyance of property by a contract which is void as being against public policy in a particular which has no reference to creditors does not necessarily give creditors a right to pursue the property after the contract has been fully executed. Such a contract may or may not be fraudulent as against creditors. If it is, they may set it aside; if it is not, they cannot.' The sale here in question was not actually fraudulent as to creditors, and it should not be held to be presumptively fraudulent, in the absence of a showing that it was prejudicial to their rights. Huette, at the time of the sale to Fass, was neither insolvent nor in failing circumstances; at least, there is no evidence that he was, and, therefore, his creditors were affected by the illegal transfer, only as all other members of the community were affected. When an illegal contract has been executed and the parties thereto are *in pari delicto,* no action lies to recover back money paid under it, or for restitution of property delivered in pursuance of its terms; and this rule is applicable, not only to the parties themselves, but to all others claiming through or under them. Huette could not recover the property in dispute; he has no cause of action against Fass. Neither can Huette's creditors reclaim such property unless the sale and delivery of it to the plaintiff was actually, or by implication of law, an invasion of their rights."

In the case at bar, as in the case from which we have just quoted, at the time of the sale, the vendor was neither insolvent nor in failing circumstances; at least, there is no evidence that he was, and, on the authority of that case, his attaching creditors, or the defendant sheriff who stands as their representative in this litigation, are not in a position to attack the sale on the ground of illegality.

As the case must go back for a new trial it is proper

to notice some other matters which are likely to arise in the future. We seriously doubt whether the evidence shows that the goods were sold with the understanding that they were to be used in violation of the liquor laws of this state. There is no direct evidence of such understanding. Counsel for the defendant contends it is established, because it was agreed that an additional amount was to be paid to Tyler in case the plaintiffs were not required to take out a license in their own names, and because, after the sale, the plaintiffs ran the saloon for some time without taking out such license, and, consequently, in violation of law. We do not undertake to say that such facts would not warrant the inference that the parties to the contract of sale contemplated an illegal use of the goods at the time the sale was made. But we are satisfied that such inference is not the only one that may fairly be drawn from the evidence.

Both the plaintiffs and the intervener Coors, at the time of the sale, were residents of Colorado. The former had been engaged in the saloon business in that state, and the latter was engaged in the manufacture and sale of beer. The contract of sale was closed there. We cannot take judicial notice of the laws of Colorado, but the uncontradicted evidence is that a liquor license in that state is transferable. It may be inferred from the evidence that the parties, being ignorant of the laws of this state in that regard, made the provision with respect to placing the note for the remainder of the purchase price in *escrow*, not with a view to a violation of the laws of this state, but with a view to informing themselves with respect thereto, and intending to take out a license if the business could not be legally conducted without. If such were their intentions at the time of the sale, then the sale was legal, and would not be rendered illegal because the plaintiffs were subsequently engaged for a short time in selling intoxicating liquors contrary to the laws of this state, and making use of the property in such alleged traffic. It

would follow from what has been said that the trial court erred in directing a verdict in favor of the defendant sheriff.

There is no contest between the intervener Coors and the plaintiff, consequently it is unnecessary to go into the merits of the appeal filed by him. But there remains to be considered the appeal of the other intervener, whom we shall refer to as the "Company."

The evidence shows that in April, 1903 (one witness made an obvious mistake of a year), Tyler wrote the company that he wanted to buy a cash register. The company in response wrote him giving the price and the terms upon which they would sell him one. The terms were $40 cash, and $25 monthly, until the price was paid; the deferred payments to be secured by a contract to be executed by Tyler whereby the title to the register was to remain in the company until all payments had been made. On receipt of this letter, Tyler wired the company to ship the register, which it did at once, sending it by express, with instructions to the express agent at Alliance that it was to be by him delivered to Tyler upon, payment by him of $40 cash, and his signing the contract hereinbefore mentioned and the notes evidencing the deferred payments. The register was received by the express agent at Alliance sometime in May, 1903, and delivered to Tyler upon his payment of $40 and signing the notes for the deferred payments. His signature to the contract was in some way overlooked. Upon discovering that the contract had not been signed by Tyler, the company insisted upon his signature thereto, and continued to insist until after the attachments in question had been levied. It has never returned, nor offered to return, the cash payment or the notes for the deferred payments. The company therefore is not in a position to treat their sale to Tyler as rescinded. By retaining the cash consideration and notes they must be held to have ratified the sale. That being true, the most favorable view that may be taken of its case is that the sale was conditional. But as

the plaintiffs had no notice, actual or constructive, of that fact and are *bona fide* purchasers, the alleged condition of the sale whereby the title remained in the company is void as to them. Comp. St. 1903, ch. 32, sec. 26. The court therefore properly instructed a verdict against the company.

It is therefore recommended that the judgment in favor of the plaintiffs and against the intervener, the National Cash Register Company, be affirmed, and that the judgment in favor of the defendant be reversed and the cause remanded for further proceedings.

DUFFIE and JACKSON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment in favor of the plaintiffs and against the intervener, the National Cash Register Company, is affirmed, and the judgment in favor of the defendant is reversed and the cause remanded for further proceedings.

JUDGMENT ACCORDINGLY.