**DAWN WARD, Petitioner**
**v.**
**JOHN REID, Respondent**
WARD v. REID
Family No. C19/2004

Territorial Court of the Virgin Islands

Division of St. Croix

November 15, 2004

H.A. CURT OTTO, ESQ., *Attorney for Petitioner*, Christiansted, USVI.

DARWIN K. CARR, ESQ., *Attorney for Respondent*, Christiansted, USVI.

STEELE, *Judge*

## MEMORANDUM OPINION

(November 15, 2004)

THIS MATTER is before the Court on a Motion for Summary Judgment filed by Dawn Ward (hereinafter "Petitioner"), mother of the minor child Timothy David Reid. The Court issued an Order on September 2, 2004, asking that Respondent file any objections to Petitioner's motion. Also before the Court is the Opposition to Petitioner's motion for summary judgment, filed by John Reid (hereinafter "Respondent"), the father of Timothy David Reid. Finally, Petitioner timely filed a reply to Respondent's opposition. For the

reasons hereinafter stated, the Court will grant Petitioner's Motion for Summary Judgment.

## I. Factual Background

Petitioner and Respondent are the mother and father, respectively, of the minor child Timothy Reid, who was born February 22, 1999. Petitioner and Respondent are not and never have been married. Although the parties cohabitated for some period of years in the past, initially raising Timothy together, they decided to go their separate ways in late 2003. Petitioner, as mother to the child, has been Timothy's primary caregiver since the parties separated. She filed a Petition for Custody with the Court on May 7, 2004, seeking sole legal and physical custody of Timothy, with liberal visitation requested for Respondent. However, the parties discussed the resolution of the custody question in some depth outside this Court's purview, with both Petitioner and Respondent represented by counsel at all relevant times.

Of course, as often happens in contentious custody cases, the parties' competing versions of events diverge and recollection becomes conveniently foggy. However, the incontrovertible fact remains that they signed and executed a Settlement Agreement (hereinafter "Agreement") on August 6, 2004, with the sole purpose of resolving the status of Timothy's custody. This Agreement was filed with the Court as "exhibit A" to Petitioner's motion for summary judgment—and it is this Agreement, or rather the circumstances of its making, which led to the rumpus we must now resolve. Counsel for the Petitioner prepared the Agreement and it contains the parties' interlineations, denoted by initials, where the parties made certain amendments. As both parties stipulate, the actual final negotiation and execution of this Agreement transpired without assistance of counsel. The parties also had the Agreement witnessed and notarized.

According to Petitioner, the final document merely capped a months-long negotiation process initiated by Respondent on April 22, 2004—facts which Respondent does not attempt to deny in his opposition or supporting affidavit. Both parties initially sought to come to agreement amicably and avoid the cost and inconvenience of litigating the matter. The Petitioner claims both parties signed the Agreement willingly and voluntarily after making certain changes, most significantly regarding length of notification to Respondent if Petitioner chose to permanently

move with Timothy. By increasing the length of notice to Respondent and providing for vacation visitation, the handwritten changes to the Agreement operate, on their face, to benefit *Respondent*, the party now challenging the validity of the document.

For his part, Respondent does not claim that no agreement was reached or that he did not actually assent to it. Instead, Respondent contends that all parties and attorneys involved agreed to have counsel review any agreement reached between Petitioner and himself before filing with the Court. Respondent had planned a vacation with Timothy for some time in August, and met with Petitioner on August 6 to discuss the trip. At this time, Respondent claims that Petitioner essentially sprung a trap on him by offering him what he considered the Hobson's choice of either signing the Agreement or having Petitioner disallow the planned vacation. According to this version of events, Petitioner used her veto power regarding Timothy's participation in the vacation as ineluctable bait for Respondent to sign the Agreement. Having been overborne in this manner, Respondent signed the Agreement "under protest, and duress," lest he have to cancel his trip to visit his mother, Timothy's grandmother. Affidavit of John Reid in Support of Respondent's Opposition to Petitioner's Motion for Summary Judgment ¶ 5 (hereinafter "Reid Aff.").

In any case, the parties signed and executed the Agreement regarding Timothy's custody. Petitioner filed her Motion for Summary Judgment on August 30, 2004.

## II. DISCUSSION

### A. Summary Judgment Standard

██ Summary judgment must be granted to a party requesting it if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In other words, summary judgment is proper if no reasonable jury could return a verdict for the non-moving party, taking into account the relevant standard of proof. *Lempert v. Singer*, 766 F. Supp. 1356 (D.V.I. 1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 252, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)). A trial judge should not weigh the evidence at the summary judgment stage, but merely determine whether any genuine

issue actually exists. *Anderson*, 477 U.S. at 249. While the nonmoving party may not rely on a mere "scintilla" of evidence to avoid summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. Therefore, in the case at bar, the Court will accept, *arguendo* and to the extent justifiable, that events transpired as Respondent has alleged, i.e., that Petitioner vetoed Timothy's vacation in an attempt to induce Respondent to sign the Agreement.

■ The party moving for summary judgment must illuminate the basis of her claim, but need not affirmatively negate the claim of her opponent. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). Petitioner here has met this burden through her affidavits and presentment of the signed Agreement to the Court. Once the moving party has carried the burden of showing the absence of any genuine issue of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Electric v. Zenith Radio*, 475 U.S. 574, 586, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986).

■ As several Supreme Court cases indicate, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249 (citations omitted). Where the evidence for the non-movant is merely "colorable" or insufficiently probative, summary judgment may be granted. *Id.* at 249-50. Further, the rule is not permissive, simply allowing a court to make such a ruling, but leads inexorably to summary judgment where the above elements have been met. The Supreme Court has held that, under Rule 56(c), summary judgment is *mandated* "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322 (1986). Respondent clearly would bear the burden of proof at trial on the allegation of duress in making the Agreement in the case *sub judice*. The Federal Rules classify duress as an affirmative defense. FED. R. CIV. P. 8(c). For an affirmative defense, the party offering it has both the burden of production and persuasion as to that issue at trial. *Moore v. Kulicke & Soffa Industries*, 318 F.3d 561, 566 (3d Cir. 2003). Consequently, the Court must grant summary judgment to Petitioner unless Respondent, as

the party advancing the defense, makes a showing sufficient to establish an essential factor for duress.

 Finally, the question of what issues are "genuine" and what facts "material," necessarily turns upon the underlying substantive law. In other words, it is the substantive law's identification of critical facts and irrelevant facts that governs. *Anderson* at 248. Here, the law of contracts provides the substantive background for purposes of determining the validity of the Agreement and Respondent's duress argument. As will be explicated more fully *infra*, Respondent has failed to present evidence either of a material or genuine issue of fact sufficient to defeat the Petitioner's motion. Keeping these principles in mind, the Court will now turn to Respondent's duress defense.

## B. Duress and the Settlement Agreement

 Of course, the primary concern in custody cases must always remain the welfare of the child. Public policy also requires encouraging parents to come to amicable agreement as to a workable and fair resolution for all parties involved, as the child's best interests frequently dovetail with those of the parents. The Court will not countenance frivolous allegations that an agreement is not in the "best interests of the child" posited merely on a breakdown of the parents' relationship and concomitant squabbling—which, based on subsequent pleadings in this case, appears to be the situation here. The expressed policy of the Virgin Islands has been to resolve custody matters swiftly, "[to] discourage continuing controversies over child custody in the interest of greater stability of home environment and of secure family relationships of the child." V.I. CODE ANN. tit. 16, § 115(a)(4) (1996). As long as an agreement comports with the Court's findings as to the child's best interests, then it will generally be enforced.

Parties before this Court have grown increasingly contumacious regarding mediated settlements, offering sundry excuses in vain attempts to avoid agreements they themselves have forged. Respondent makes much of the fact that Petitioner presented the Agreement to the Court without providing Respondent and his counsel the opportunity to "review" the document prior to filing. Reid Aff. ¶ 7. However, even where mediation has not been ordered, voluntary settlements are to be encouraged and honored, with the caveat, noted above, that they must advance the best interests of the child. As a general matter, "[s]ettlement

agreements are encouraged as a matter of public policy because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by courts." *D.R. by M.R. v. East Brunswick Board of Ed.*, 109 F.3d 896, 901 (3d Cir. 1997). Finally, in the context of civil settlement agreements, such agreements are "binding upon the parties whether or not made in the presence of the court." *Green v. John H. Lewis & Co.*, 436 F.2d 389, 390 (3d Cir. 1970); *Paiewonsky Assoc. v. Sharp Properties, Inc.*, 761 F. Supp. 1231, 26 V.I. 228, 231 (1991). This rule seems especially apropos in the family context, where the Court maintains continuing jurisdiction over the parties and the child.

Respondent has not—and indeed, given the facts here, could not—allege that the parties did not execute a contract on August 6, 2004. The *Paiewonsky* court noted, "the construction and enforcement of settlement agreements are governed by principles of local law applicable to contracts generally." *Id.* at 231 (citing *Plymouth Mut. Life Ins. Co. v. Illinois Life Ins. Co.*, 378 F.2d 389 (3d Cir. 1967)). In the Virgin Islands, the Restatement of the Law promulgated by the American Law Institute controls, as long as it does not conflict with a statute. V.I. CODE ANN. tit. 1, § 4 (1995). Generally, a contract signed under duress is voidable at the option of the party deemed the "victim" of the transaction. RESTATEMENT (SECOND) OF CONTRACTS § 175 (1981) (hereinafter "REST. 2ND CONTR."). Respondent seeks to void the Agreement on the grounds of duress in its making based on the allegation, discussed *supra*, that Petitioner denied visitation until Respondent signed the Agreement.

There are two types of duress under the second Restatement: duress by physical compulsion and duress by wrongful threats. REST. 2ND CONTR. §§ 174-175; *Lempert v. Singer*, 766 F. Supp. 1356, 1361 (D.V.I. 1991). Respondent has made no allegation that he was physically compelled to sign the Agreement. Rather, he relies on language essentially paraphrasing the part of the Restatement addressing wrongful threats.

 In order to make out a case for duress by improper threat, the party asserting the defense must show both an improper threat *and* no reasonable alternative to making the contract:

> 1) If a party's manifestation of assent is induced by an *improper threat* by the other party that leaves the victim *no reasonable alternative*, the contract is voidable by the victim.

REST. 2ND CONTR. § 175 (emphasis added). Respondent has failed to allege facts giving rise to an "improper threat" by Petitioner. As the Restatement confirms, every offer or contract negotiation contains an implied threat by at least one of the parties; at the least, the specter looms that the offeror will not make the contract unless the offeree accepts the original terms. REST. 2ND CONTR. § 176, cmt. *a.* Leaving aside threatened crimes or torts, which are inapplicable here, the Restatement defines improper threat as one where "the resulting exchange is not on fair terms, and (a) the threatened act would *not* significantly benefit the party making the threat." REST. 2ND CONTR. § 176(2)(a) (emphasis added); *Lempert*, 766 F. Supp. at 1361.

Respondent has mistakenly argued against himself in his opposition by enumerating the myriad benefits of the Agreement for Petitioner. The benefit of the resultant contract is not the correct inquiry under § 176(2)(a), which is concerned with the case where a threatening party, upon the recipient's failure to contract, carries out a threatened *act* that does not significantly benefit him while harming the recipient; in other words, committing an act of pure vindictiveness. *See* cmt. *f.* to § 176. In any case, Petitioner *would* have benefited from the threatened *act*, as she would have retained custody of her son. The Court finds it immaterial that this would have also harmed Respondent in some way, for, as noted above, threats are often made and carried out in the contract setting, and someone's feelings or pocketbook are inevitably affected as a result. Respondent has also stated, in rather elliptical fashion, that the Agreement is "unfair" because Respondent now claims that joint physical custody is appropriate. This is a classic case of a party, due to subsequent souring of the relationship with his partner to the transaction, regretting the transaction he made. In any case, this allegation is insufficient to show unfairness, and beyond either the sagacity or power of Respondent to determine. Even assuming, *arguendo*, that the resulting transaction is not on fair terms, Respondent cannot show that the threatened act would have harmed him while *not* benefiting Petitioner. Therefore, there was no "improper threat" as a matter of law.

██ On the question of what constitutes a "reasonable alternative," the Restatement provides that while it is "enough if the threat actually induces assent," a party must take advantage of any available reasonable alternative, which may specifically take "the form of a legal remedy." REST. 2ND CONTR. § 175, cmt. *b.* In fact, comment *b* raises the

78

hypothetical of a threatened civil action to induce assent, and notes that duress will not lie in such a case, as the other party may assert his rights in the threatened action. *Id.,* Illustration 1. In the case *sub judice,* Respondent and Petitioner had already engaged the court in this custody matter, and both parties had retained counsel, who had advised them to some degree regarding the issue of the settlement. If Petitioner had truly threatened to withhold a proper visitation, Respondent could and should have filed a motion with the court requiring visitation, while avoiding signing the Agreement altogether. While the outcome of such a motion may be unknown at the time, it easily qualifies as a readily available, reasonable alternative by providing Respondent with a "legal remedy" consistent with the rule of the Restatement. At the least, Respondent could have contacted his attorney, especially as a gap of some days existed between the signing of the Agreement and the planned departure of Respondent and his son. Finally, § 175 also provides that courts should subjectively examine whether a threat induced the contract, stating that "[a]ll attendant circumstances must be considered, including such matters as the age, background and relationship of the parties." REST. 2ND CONTR. § 175, cmt. *c.* Here too, the Respondent's case continues to take on water. Both parties stand in relative equality to one another on all counts, and counsel represented both parties at the time in question.

The parties rely heavily on *Lempert,* 766 F. Supp. 1356 (D.V.I. 1991), although in that case the "victim" plaintiff relied heavily on the RESTATEMENT (FIRST) OF CONTRACTS § 492, which defines duress more broadly as "any wrongful act ... that compels a manifestation of apparent assent ... without his volition." However, the *Lempert* court did decide the duress issue at least partly on the grounds of improper threat, as well, and we will rely on it to the extent that it applies. In *Lempert,* the buyer in a real estate transaction claimed duress in the signing of a power of attorney to another, who accepted the deed on her behalf. The plaintiff then sought to have the sale nullified on the basis that she could not attend the land sale closing. Apparently, her theory was that since defendants would not reschedule, and she had made prior plans to assist her mother and ill stepfather, she was forced into the transaction or else risked losing the purchase. *Lempert* at 1360-61. The court held that Lempert did not satisfy either prong for duress by threat, neither showing that the threat to nix the land sale was *wrongful* nor that she did not have

79

a reasonable alternative to making the bargain. *Id.* at 1361. In short, the court found that Lempert merely had a difficult choice to make: she could assist her mother or she could attend the land sale closing. *Id.* at 1362. Further, she had reasonable alternatives such as asking another to assist her mother, or perhaps not making the purchase of the land at all. Similarly, Respondent in the case at bar may have been faced with what seemed like a difficult decision at the time—submit to the Agreement or *possibly* take his vacation without Timothy. In fact, of course, Respondent could have rejected the proffered Agreement and rescheduled his vacation or taken the vacation without Timothy.

■ Although Respondent does not indicate with sufficient specificity the details surrounding the execution of the Agreement, Petitioner's behavior would have had to surpass mere insistence that he sign. As the *Lempert* court noted, "'insisting' is not the same as coercion, which is always a necessary element of duress." *Id.* at 1362. To establish "coercion," a party must show that he was overborne and deprived of his free will, or placed in such great fear that he cannot exercise free will and judgment. *Id.* (quoting *Smith v. Whitman*, 75 N.J. Super. 228, 183 A.2d 89, 96 (App. Div. 1962)). Here, Respondent has not presented any version of events sufficient to cast Petitioner in such a minacious and threatening light. In fact, the Court finds that Respondent could hardly have been "overborne" and deprived of his free will in signing an Agreement that includes changes he insisted on himself, and which redound to his benefit.

■ Finally, Respondent cannot claim that Petitioner took advantage of an "existing hardship" by thwarting Respondent's travel plans. Although easing the way for Timothy to accompany him on vacation may have factored into Respondent's decision to sign the Agreement, this in no way implicates Petitioner. As noted by *Lempert*, quoting the RESTATEMENT and also Williston, "[t]aking advantage of an existing hardship is not duress." 766 F. Supp. at 1362. This is the rule in nearly every jurisdiction. As one Ohio court put it, a party advancing the duress defense, "must prove coercion by the other party to the contract. It is not enough to show that one assented merely because of difficult circumstances that are not the fault of the other party." *Sheet Metal Workers v. Bryden House*, 130 Ohio App. 3d 132, 719 N.E.2d 646, 652 (1998). Clearly, Petitioner did not schedule Respondent's vacation, and

she cannot be held responsible if Respondent's travel plans influenced his decision to sign the Agreement.

## III. CONCLUSION

For the reasons elaborated above, the Court holds that, even taking the facts in the light most favorable to Respondent and giving him the benefit of every possible inference, he fails to make out a prima facie case of duress. Petitioner's actions do not qualify as duress as a matter of law. This case rather pointedly presents a situation where the Respondent's evidence is merely colorable and insufficiently probative of his claim. Therefore, summary judgment for Petitioner is proper.